IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DELORIS ASKINS BLACKBURN | ) |
| | ) |
| v. | ) CV. NO. 00-CO-8047-NE |
| | ) |
| UNITED STATES OF AMERICA | ) |

MEMORANDUM OF DECISION

Deloris Askins Blackburn was charged in a six count indictment along with Richard Showers, Jr. and Thomas Porter Miller. Blackburn, Showers, and Miller were charged with one count of conspiracy to possess with the intent to distribute a quantity in excess of five grams of cocaine base ("crack") in violation of Title 21 U.S.C. § 846 and with five counts of having possessed with the intent to distribute a quantity of cocaine base ("crack") in violation of 21 U.S.C. § 841. Blackburn was convicted on all counts. She was sentenced to concurrent terms of 168 months on all counts. The Eleventh Circuit affirmed her conviction and sentence on March 29, 2000 and issued its mandate on May 10, 2000.

Blackburn filed this Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody raising three issues which are addressed below.

I. Ineffective Assistance of Counsel

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington,* 466 U.S. 668 (1984). The Court elaborated:

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendants of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

Ineffectiveness of counsel occurs only when the attorney's performance fell below an objective standard of reasonableness and, further, that but for the attorney's failure, the result of the proceeding would probably have been different. *Chadwick v. Green*, 740 F.2d 897 (11th Cir. 1984). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland, supra*, 466 U.S. at 690. There is a strong presumption that trial counsel's conduct is the result of trial strategy and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Sinclair v. Wainwright,* 814 F.2d 1516 (11th Cir. 1987), *citing Strickland v. Washington, supra* at 690. Although Ms. Blackburn talks about various ineffective assistance of counsel principles, only three allegations of ineffective assistance of counsel are supported with specific facts and warrant discussion.

    1.    <u>Whether trial counsel was ineffective for not challenging at trial and sentencing the quantity and type of cocaine</u>

Blackburn argues that had counsel objected to the sentencing for crack cocaine there is "a reasonable probability that [she] would have received a substantially reduced sentence – i.e. a sentence for powder cocaine. She argues that it was not proved by a preponderance of the evidence

that the substance involved in Blackburn's relevant conduct was crack cocaine as opposed to another form of cocaine base.

Martha Odom, retired forensic scientist with the Alabama Department of Forensic Sciences, testified as follows:

> Q. Would you look at Government's Exhibit 1, please, and tell me what the weight of that substance was?
>
> A. Yes. Exhibit Number 1 weighed 2.9 grams or one-tenth of an ounce.
>
> Q. It did test positive for cocaine base?
>
> A. Yes.
>
> Q. Exhibit 2?
>
> A. Exhibit 2, laboratory analyses revealed the presence of cocaine; the weight is 0.07, or 2 one-thousandths of an ounce.
>
> ....
>
> Q. Exhibit 3?
>
> A. Exhibit 3 weighed 12.2 grams or 0.4 ounce.
>
> Q. And then Exhibits 2 and 3 did test positive for the presence of cocaine base?
>
> A. Yes, they did.
>
> ....
>
> THE COURT: Before you go on, may I ask you, you say cocaine base?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Is cocaine base commonly referred to as "crack," or is there some distinction –

> THE WITNESS: Yes, sir. That's – the slang name is crack cocaine, but it is cocaine in the base form; as opposed to the powder form, which is hydrochloride salt.
>
> THE COURT: When you refer to the substance as cocaine base, you're using that as a synonym for crack cocaine?
>
> THE WITNESS: Yes, sir.

BY MS. BROWN:

> Q. Let me ask you this – of the three exhibits, do they all appear to be a rock-like substance?
>
> A. Yes, a compressed material.
>
> Q. Compressed white material?
>
> A. Yes. Well it's sort of an off-white material.

(R-264-66).

Ed C. White, forensic chemist with the Alabama Department of Forensic Sciences, testified concerning the results of his tests on Exhibits 4 and 5:

> A. That each one of these exhibits was cocaine base.
>
> Q. And by cocaine base, do you – does that also mean crack?
>
> A. Yes, ma'am, it does.
>
> ....
>
> Q. How much did Exhibit 4 weigh?
>
> A. It weighed 3.0 grams, or 0.1 ounce. And Exhibit 5 weighed 1.09 grams, or 0.03 ounce.

(R-271-72).

The testimony of the forensic experts was sufficient proof that the substances that were Government's exhibits 1-5 were crack cocaine.

The government was not required to prove that the substance contained sodium bicarbonate. The commentary to U.S.S.G. § 2D1.1(c), Note(D) states:

> (D) "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, <u>usually</u> prepared by processing cocaine hydrochloride and sodium bicarbonate, and <u>usually</u> appearing in a lumpy, rocklike form.

(Emphasis added).

In *United States v. Jones*, 159 F.3d 969, 982-83 (6th Cir. 1998) the court recognized:

> The definition, through the use of the word "usually," serves merely to illustrate a common method of conversion. See *United States v. Abdul*, 122 F.3d 477, 479 (7th Cir.), *cert. denied,* ___ U.S. ___, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). If we were to disregard the qualifying term "usually," crack dealers could avoid the penalties for distribution of crack simply by finding some substitute for sodium bicarbonate in production, or by crushing the rocks so that the final product resembles powder. Although crack might generally be produced using sodium bicarbonate production via sodium bicarbonate is not the exclusive preparation method recognized for purposes of § 2D1.1. We conclude that the qualifier "usually" in the phrase "usually prepared ... with sodium bicarbonate" is an acknowledgment that other methods of crack preparation exist and that not all forms of "cocaine base" need contain sodium bicarbonate to qualify as crack for sentencing purposes; the Commission's reference to sodium bicarbonate is merely illustrative. Accordingly, the presence of sodium bicarbonate is not a necessary prerequisite to a district court's factual determination that cocaine base is crack. *See Abdul*, 122 F.3d at 479; *United States v. Stewart*, 122 F.3d 625, 627 (8th Cir. 1997).

Whether a particular substance is crack cocaine is a question of fact to be determined by the district court. *Edwards v. United States*, 523 U.S. 511 (1998). The Court of Appeals for the Eleventh Circuit has recognized that the cocaine base "and its distinct physical forms, such as coca

paste and crack cocaine are chemically indistinguishable." *United States v. Sloan*, 97 F.3d 1378, 1382 (11th Cir. 1996), *cert. denied,* 520 U.S. 1277 (1997). The Eleventh Circuit has also recognized that crack cocaine is sufficiently physically distinguishable to allow persons to confirm that they have distributed it. *Sloan*, 97 F.3d 1383, n.8. *See also United States v. Brown*, 156 F.3d 813, 816 (8th Cir. 1998) ("among the most knowledgeable experts on crack are those who regularly smoke it or sell it."); *United States v. Robinson*, 144 F.3d 104 (1st Cir. 1998).

There was sufficient evidence that the substances were crack cocaine. Further, there was sufficient proof as to quantity. Blackburn has failed to show prejudice based on counsel's failure to challenge at trial or sentencing the cocaine based on quantity or based on it being crack cocaine.

2. Whether trial counsel was ineffective for not instructing Blackburn concerning a guilty plea

Blackburn argues that counsel failed to instruct Blackburn as to all facts relevant to the determination of whether to plead guilty or not guilty including the "option of a 3 point reduction for taking a plea of guilty, which would have reduced her total point[s], thus reducing her time of incarceration." According to defense counsel's affidavit which Blackburn has not contradicted, "Ms. Blackburn absolutely denied to counsel any connections with the allegations in the indictment, denied her guilt, and would not even consider pleading guilty. Counsel did not tell her to go to trial; it was her decision based upon her allegations to counsel that she was absolutely not guilty." (Doc. #160 – attached affidavit). In light of counsel's affidavit, the court concludes that Blackburn has failed to show that counsel was ineffective with respect to his advice concerning whether to plead guilty.

3. Whether trial counsel failed to advise Blackburn of her right to testify at trial

Blackburn argues that "But for Counsel's failure and unprofessional omissions, Ms. Blackburn would have taken the stand and directly rebutted each and every material fact presented through the perjured testimony of government witnesses." According to the affidavit of defense counsel, "First of all Ms. Blackburn had the option to take the stand but did not want to do so, and secondly she could not have rebutted each and every material fact presented through many, many witnesses for the government, and although Ms. Blackburn may now say these witnesses gave perjured testimony, the jury did not believe it was perjured testimony." Blackburn has not disputed counsel's assertion that she did not want to take the stand. Had she testified contrary to the testimony of witnesses for the government, she may well have had her sentence enhanced at sentencing based on obstruction of justice. The court concludes that Blackburn has shown neither deficient performance nor prejudice.

II. <u>Whether there was prosecutorial misconduct</u>

Blackburn argues that the government's promise of leniency to its witnesses in exchange for their testimony at trial is prosecutorial misconduct. She does not state any specific facts from her case concerning this claim. She appears to rely on the panel decision of *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998) in which the court held that the prosecuting attorney violated 18 U.S.C. § 201(c)(2) when he offered leniency to a co-defendant in exchange for truthful testimony. *Singleton* was reversed by the Tenth Circuit Court of Appeals *en banc* in *United States v. Singleton*, 165 F.3d 1297, 1298 (10th Cir.), *cert. denied*, 527 U.S. 1024 (1999), which concluded that "18 U.S.C. § 201 does not apply to the United States or an Assistant United States Attorney functioning within the official scope of the office." In *United States v. Lowery*, 166 F.3d 1119, 1122-24 (11th Cir.), *cert. denied*, 528 U.S. 889 (1999), the Eleventh Circuit specifically rejected what it referred

7

to as " the *Singleton* issue" and held "that agreements in which the government trades sentencing recommendations or other official action or consideration for cooperation, including testimony, do not violate 18 U.S.C. § 201(c)(2)." This claim is therefore without merit.

III.     Whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000) should apply to Blackburn's case

She argues that "her sentence is excessive insomuch as her indictment shows no amount of drugs, and based on heresay [sic]." On direct appeal, the Eleventh Circuit Court of Appeals rejected Blackburn's hearsay argument. (See doc. #151). There was no objection in the district court based on quantity of drugs. Further, this issue was not raised on direct appeal. Blackburn should be procedurally barred from challenging her sentence on *Apprendi* grounds because of her failure to raise the argument on direct appeal. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) Because this defense was not raised by respondents, the court will address this issue further.

*Apprendi* was decided on June 26, 2000, one day before Blackburn's conviction became final.[1] On February 9, 2005, Blackburn filed a document entitled "Intervening Constitutional Law" (Doc. #199) in which she argues that under *Blakely v. Washington*, 524 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), based on the jury's verdict, the court could not enhance her sentence based on any amount of cocaine base ("crack") in excess of five grams or for obstruction of justice.[2]

In *Apprendi*, the Supreme Court held that a jury must decide each element of the offense charged, beyond a reasonable doubt. *Apprendi* explicitly limited its holding to facts "that increase

---

[1] Blackburn's conviction was not final until expiration of the ninety days in which she had to file a petition for writ of certiorari in the United States Supreme Court. *Griffith v. Kentucky*, 479 U.S. 314 (1987). The Eleventh Circuit Court of Appeal's decision affirming Blackburn's conviction and sentence was entered March 29, 2000. She then had until June 27, 2000 in which to file the petition for certiorari. Rules 13.1 and 13.3, *Rules of the Supreme Court of the United States*.

[2] There was no enhancement of Blackburn's sentence for obstruction of justice.

[ ] the penalty for a crime *beyond the prescribed statutory maximum.*" *Apprendi*, 530 U.S. at 490. In *United States v. Sanchez*, 269 F.3d 1250, 1271 (11th Cir. 2001), *cert. denied,* 535 U.S. 942 (2002), the Eleventh Circuit concluded that "a district court's drug quantity finding and utilization of one of the 841(b)(1)(A) and 841(b)(1)(B) sentencing schemes in § 841 cases in no manner violates *Apprendi* unless the actual sentence ultimately imposed exceeds that catch all maximum penalty in 841(b)(1)(C)." See also *United States v. Hester*, 287 F.3d 1355 (11th Cir. 2002), *cert. denied,* 537 U.S. 966 (2002). Under § 841(b)(1)(C), the statutory maximum that Blackburn faced was not more than 20 years. She received a sentence of 14 years. The *Apprendi* decision was subsequently extended in *Blakely v. Washington*, 542 U.S. ____, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Booker*, ____ U.S. ____, 125 S.Ct. 738, ____ L.Ed.2d ____ (2005). *Blakely* and *Booker*, however, do not apply retroactively to § 2255 cases on collateral review. *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005). Blackburn's conviction was final prior to the decisions in *Blakely* and *Booker*; therefore, she is not entitled to their benefit on collateral review. *Varela*, 400 F.3d at 867, n. 4.

IV. <u>Claims for which there was no stated factual basis</u>

Blackburn submitted "arguments" entitled "co-defendant's heresay [sic] testimony" and "coerced testimony of witnesses; " however, she did not state any facts to support either of these "arguments;" therefore, they will not be considered. The court notes, however, that the government correctly stated that Blackburn's co-defendants did not give any confessions, statements, or testimony that implicated the her.

After consideration of the petition, the positions of the parties and the applicable law, Ms. Blackburn's motion for relief pursuant to 28 U.S.C. § 2255 is due to be and the same is hereby DENIED in its entirety.

Done this <u>31st</u> day of <u>March 2005</u>.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
124153